UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
JOHN JAEGER,

                          Plaintiff,

       -against-

NORTH BABYLON UNION FREE SCHOOL DISTRICT,

                        Defendant.
--------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
15-cv-5452 (ADS)(SIL)

**APPEARANCES:**

**Zabell & Associates, P.C.**
*Attorneys for the Plaintiff*
1 Corporate Drive, Suite 103
Bohemia, NY 11716
        By:   Saul D. Zabell, Esq., Of Counsel

**Sokoloff Stern LLP**
*Attorneys for the Defendant*
179 Westbury Avenue
Carle Place, NY 11514
        By:   Steven C. Stern, Esq., Of Counsel

**SPATT, District Judge:**

On September 21, 2015, the Plaintiff John Jaeger ("Jaeger" or the "Plaintiff") commenced this action against his employer, the Defendant North Babylon Union Free School District (the "District" or "Defendant"), alleging gender-based employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*

Presently before the Court is a motion by the District pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted.

1

For the reasons that follow, the Defendant's motion to dismiss is granted and this case is dismissed in its entirety.

## I. Background

Unless otherwise noted, the following facts are drawn from the complaint and are construed in favor of the Plaintiff.

Jaeger, a male, has been employed by the Defendant as a biology teacher in the North Babylon High School (the "School") since 1999. See Compl. ¶¶ 17-18. His former wife, Kristy Middleton ("Middleton"), has also been employed by the Defendant as a chemistry teacher in the School since approximately 2002. See id. ¶ 20. The present dispute arises from the close working relationship between these former spouses, although Middleton is not a party to this action.

### A. Middleton's Promotion and the Initial Allegations of Abuse

In August 2012, after several years as married coworkers, the Plaintiff and Middleton ended their relationship and began divorce proceedings. See id. ¶ 21.

There are no relevant allegations in the complaint pertaining to the period of time between the termination of the marital relationship in August 2012 and the summer of 2013. However, on unspecified dates in the summer of 2013, Middleton allegedly filed police reports accusing the Plaintiff of harassing her. See id. ¶¶ 26-27. The complaint does not provide any factual information relating to these reports, other than to claim that Middleton's accusations were false.

Also during the summer of 2013, Middleton was promoted by the District to her current position as Science Curriculum Associate at the School, making her one of the Plaintiff's direct supervisors. See id. ¶¶ 23-24.

On August 29, 2013, the Plaintiff voiced concerns about this situation to the District Superintendent Patricia Godek ("Superintendent Godek"). See id. ¶ 28. In particular, Jaeger expressed fear that his continued employment was in jeopardy due to Middleton's anticipated supervisory role in the School, coupled with the false harassment charges that she had leveled against him. See id.

The Plaintiff alleges that "immediately after" he notified Superintendent Godek of his concerns, Middleton complained internally to the District that the Plaintiff was harassing her. See id. ¶ 29. Jaeger's pleading fails to provide the underlying factual basis of Middleton's internal complaint, stating only that it was "false and pretextual" and was "designed to interfere with [his] continued employment" by the District. Id. ¶ 30. However, a copy of Middleton's internal complaint is annexed to an affidavit submitted in support of the instant motion. See Dec. 18, 2015 Declaration of Steven C. Stern, Esq. ("Stern Decl."), Ex. "A." To the extent that Jaeger specifically references this document in his pleading and directly relies upon it in framing his complaint; and to the further extent that he does not contest the District's submission of the document or otherwise contend that the Court should refrain from considering it, in an exercise of its discretion, the Court will consider this documentary evidence in resolving the present motion. See Hampshire Rec., LLC v. Vill. of Mamaroneck, No. 14-cv-7228, 2016 U.S. Dist. LEXIS 39496, at *14-*15 (S.D.N.Y. Mar. 25, 2016).

Initially, although the Plaintiff indicated that Middleton complained "immediately after" his own conversation with District officials, her complaint is dated September 30, 2013, approximately one month later.

Further, Middleton's complaint outlines three separate incidents of harassment by the Plaintiff, two of which occurred on August 29, 2013 and one on September 25, 2013. The Court will briefly summarize these alleged incidents.

First, Middleton alleged that on August 25, 2013, the Plaintiff entered a science department meeting late; took a seat close to her; and pulled out a stack of papers containing private material pertaining to their ongoing divorce proceeding. In particular, Middleton charged that the Plaintiff had been "flipping through" print-outs of private messages in the presence their colleagues.

Second, Middleton alleged that on the same date, namely, August 25, 2013, the Plaintiff interrupted a conversation that she was having with a colleague named Joe Pafundi. Apparently, the Plaintiff interjected a statement to the effect of "Joe, come to my room when you are done, I have to talk to you." Also, later in the day, Middleton was approached by a colleague named Janice Brady, who informed her that the Plaintiff had said he planned to "leave early every Monday and Tuesday and get himself fired."

Third, Middleton complained that on September 25, 2013, the Plaintiff again interrupted a conversation between Middleton and one Marysusan Noll. According to Middleton, the Plaintiff stated, "Excuse me Kristy can you tell me where my kids are?" Middleton claimed to have replied "John please do not speak to me at work," to which he stated, "Kristy tell me right now. You cannot restrict my access to my children. I have not spoken to them in two days."

In a separate section of her internal complaint, Middleton identified witnesses to each encounter, and also indicated that in July 2013, she made prior reports of harassment by the Plaintiff to the Suffolk County Police Department. Although, as noted above, the

underlying factual basis for those reports was not included in Jaeger's pleading, Middleton indicated in her complaint to the District that on August 1, 2013, the Suffolk County Family Court issued a temporary order of protection against the Plaintiff.

Several days after Middleton filed her initial harassment complaint, on November 4, 2013, she submitted an amended complaint, which chronicled two additional incidents of harassment by Jaeger, and is annexed to the Stern Declaration as Exhibit "B."

The revised complaint alleged that on October 31, 2013, the Plaintiff sent a text message to Middleton, stating that he had been "surprised" to see her on a recent field trip, and that she should "have the courtesy to ask [him]" the next time she intends to be a on a field trip with him. Middleton also complained that the Plaintiff had accused her of using her supervisory position to harass him, and that he felt "extremely uncomfortable."

Further, Middleton alleged that on November 1, 2013, the Plaintiff sent her a text message accusing her of unnecessarily walking past his classroom during the school day; and again suggesting that she "followed" him on a field trip, despite instructions from the School administration that the two not have contact.

**B.    The Allegations Relating to the 2013-2014 Schoolyear**

Throughout the 2013-2014 schoolyear, while in a supervisory position over the Plaintiff, Middleton allegedly made numerous complaints to the District that the Plaintiff was harassing her. See id. ¶ 31.    According to the Plaintiff, all of these complaints were "materially false and maliciously filed." Id. ¶ 32.

 Further, the Plaintiff alleged that Middleton "sought out and accosted" him on several occasions during school hours. See id. ¶ 33. For example, Middleton allegedly screamed at the Plaintiff in the presence of other School employees; harassed him about

matters involving their children; falsely accused him of contacting her through text messages and otherwise harassing her in the workplace; disrupted his administration of a standardized test; and advised him that District officials were investigating the appropriateness of his behavior.  See id. ¶ 34.

Up to this point, the only relevant allegation relating to the District's involvement in the complained-of events is that it was aware of Middleton's conduct.  See id. ¶ 35.

### 1.    The December 4, 2013 Meeting

On December 4, 2013, the School Principal Jonathan Klomp ("Principal Klomp") held a meeting attended by the president of the teachers' union Selena Durio ("Durio"), the District's Assistant Superintendent Dr. Jody Marino ("Dr. Marino"), and the Plaintiff.  See id. ¶ 36.   According to the Plaintiff, the purpose of this meeting was to discuss his "emotional stability," and was convened as a direct result of Middleton's complaints.  See id. ¶ 36-37.

During this meeting, the Plaintiff claims to have reiterated his concerns about Middleton's supervisory role over him, coupled with her "continued harassment of him in the workplace."  See id. ¶ 39-40.  He also complained about the "heightened scrutiny" to which he was subjected as a result of Middleton's complaints.  Evidently, the formal investigation that Middleton had mentioned to the Plaintiff was, in fact, underway.  See id. ¶¶ 40-41.

On December 6, 2013, Dr. Marino sent a memorandum to the Plaintiff, with copies to Superintendent Godek, Principal Klomp, Ms. Durio, and the Plaintiff's internal personnel file, which stated, in relevant part, that "the District [was] in the process of investigating allegations" by Middleton concerning the alleged harassment during the school day.  See

Jan. 19, 2016 Declaration of Saul D. Zabell, Esq. ("Zabell Decl."), at Ex. "6."    In this regard, the memo directed the Plaintiff to "refrain from contact or communication with Kristy Middleton" and also to "stop utilizing sick days for absences where [he was] not sick," such as divorce-related court appearances.  Id.

### 2. The Plaintiff's First Charge of Discrimination

On or about April 14, 2014, the Plaintiff filed a charge of gender-based employment discrimination and discriminatory retaliation against the District with the Equal Employment Opportunity Commission ("EEOC").    Although Jaeger's complaint fails to provide any factual information regarding the content of that charge, copies of the relevant documentation are annexed to the Stern Declaration as Exhibit "C" and the Zabell Declaration as Exhibit "2."  The Court notes that the allegations supporting the EEOC charge appear to be materially indistinguishable from the allegations made in this action, which are outlined above.

The Plaintiff contends that, immediately following his filing with the EEOC, Principal Klomp began monitoring his attendance in a manner inconsistent with that of his colleagues.    See id. ¶¶ 73-74.    According to the Plaintiff, this "heightened scrutiny" constituted retaliation for his having filed a charge of discrimination.  See id. ¶ 75.

### 3. The May 29, 2014 Field Trip

On May 29, 2014, the Plaintiff was coordinating a student field trip when Middleton entered the room, apparently in violation of the order of protection that she obtained against him.  See id. ¶¶ 43-44.  According to the Plaintiff, Middleton's presence in the same room exposed him to potential liability under the restraining order.  See id. ¶ 46.  In this regard, the Plaintiff alleges that the District "placed [him] in a compromising position,"

id. ¶ 47, although he does not specify any act or omission on the part of the District that may have been responsible for placing him in such a situation.

### 4. The June 3, 2014 Test Administration

On June 3, 2014, the District allegedly directed Middleton to distribute Regents Examination materials to School teachers who were administering the test, including the Plaintiff. See id. ¶ 49. Apparently, the order of protection that Middleton obtained against Jaeger was still in effect on the date in question. See id. ¶ 51. Aware of this fact, the Plaintiff allegedly refrained from retrieving his testing materials until Middleton had left the vicinity. See id. ¶ 53.

However, according to the Plaintiff, when he eventually entered the office where the materials were being distributed, Middleton was "hiding" behind a counter, out of his view. See id. ¶ 54. The Plaintiff does not allege that there was any interaction or confrontation between them, but again alleges that the District, aware of the restraining order, "placed [him] in a compromising position," this time by failing to have a different employee other than Middleton distribute the relevant testing materials to him. See id. ¶¶ 55-56.

The Plaintiff alleges that he later discussed this incident with Principal Klomp, who, in response to Jaeger's "questioning" about the District's decision to assign the task of distributing the testing materials to Middleton, stated that he was "taking orders" from Dr. Marino and others in the District's personnel office. Id. ¶¶ 59-60.

The complaint further alleges that the Plaintiff made Principal Klomp aware of what had transpired on May 29, 2014, namely, Middleton entering the room in which he was organizing a field trip. See id. ¶ 61.

On that same date, namely, June 3, 2014, the Plaintiff's attorney sent a letter to Principal Klomp demanding that the District take all necessary steps to prevent interaction between the Plaintiff and Middleton.  See id. ¶ 48.

**5.    The June 4, 2014 Meeting**

On June 4, 2014 – one day after the events described above – Principal Klomp again met with the Plaintiff.  See id. ¶ 62.  At this meeting, Principal Klomp allegedly accused the Plaintiff of fabricating his version of the "field trip incident" that transpired on May 29, 2014.  See id. ¶ 63.  Apparently, the Plaintiff contends that Principal Klomp's accusation constituted retaliation for the letter that had been sent by his attorney the day before.  See id.

**6.    Middleton Refers the Plaintiff to the District Attorney**

On June 26, 2014, Middleton allegedly contacted the Suffolk County District Attorney's Office to register complaints about the Plaintiff's harassment of her at the School.  See id. ¶ 64.  Jaeger's pleading does not provide any factual information relating to this incident other than to allege that her complaints were false.  See id. ¶ 65.

The Plaintiff contends that this complaint by Middleton to the District Attorney was in retaliation for his having complained to Principal Klomp about the field trip incident. See id.  Again, the Court notes that Middleton is not a party to this action, and the District is not alleged to have had any role in this occurrence.

**7.    The Plaintiff's Second Charge of Discrimination**

On July 8, 2014, the Plaintiff filed an amended charge of discrimination with the EEOC, which was updated to report the events that had allegedly transpired since April 2014.  See Zabell Decl. Ex. "4."  Again, the allegations supporting the amended EEOC charge

do not appear to vary in any material respect from the relevant allegations underlying the complaint in this action.

### 8. The September 2, 2014 Meeting

Principal Klomp held a third meeting on September 2, 2014, which was attended by the Plaintiff, the School's Assistant Principal Libby Bulger, and an unidentified representative of the teachers' union. See id. ¶¶ 66-67.

Apparently, the purpose of this meeting was to discuss whether the Plaintiff had impermissibly left the School's premises several days earlier during a so-called "superintendent's conference day." See id. ¶ 68. The Plaintiff did not deny leaving the premises, but claimed he had been unaware of any rule prohibiting him from doing so. See id. ¶ 69. The Plaintiff alleges that many of his colleagues had also left the premises on those days, "without incident," although it is unclear whether he shared this information at the meeting. See id. ¶ 70.

In response to the Plaintiff's remarks, Principal Klomp allegedly stated that Jaeger had a "bad year" and that he, Principal Klomp, had been "more than fair" with him. Id. ¶ 71. However, there is no allegation that the District took any disciplinary action against the Plaintiff for this alleged infraction.

### C. Additional Facts and the Plaintiff's Third Charge of Discrimination

In the closing paragraphs of the factual recital in his complaint, the Plaintiff sets forth a series of disjointed allegations, including that he has been denied classroom resources; that he did not receive adequate administrative support; and that he has been effectively "cut off" from the rest of the School's science department. See id. ¶¶ 77-80. Further, the Plaintiff alleges that he has been prevented from obtaining an alternate

teaching position within the District or elsewhere, and that the District has "effectively eliminated" his "professional promotional possibilities." Id. ¶¶ 80-81. However, the complaint fails to set forth any factual details regarding these claims.

On October 3, 2014, the Plaintiff filed a second amended charge of discrimination with the EEOC, which was again updated to report the relevant intervening events. See Zabell Decl. Ex. "5."

## D.    The Instant Action

On August 24, 2015, the EEOC issued to the Plaintiff a notice of his right to sue within 90 days. On September 21, 2015, based on the facts outlined above, the Plaintiff commenced this action under Title VII and the NYSHRL alleging gender-based employment discrimination and discriminatory retaliation.

As noted above, on December 18, 2015, the Defendant moved under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint on the ground that the complaint fails to plausibly allege compensable wrongful conduct on the part of the District.

## II.    Discussion

## A.    The Standard of Review under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009)." Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

Following the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it has been clear in this Circuit that a Title VII plaintiff " 'need not allege facts establishing each element of a prima facie case of discrimination in order to survive a motion to dismiss,' E.E.O.C. v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 254 (2d Cir. 2014), but it must nevertheless comply with the plausibility standard set forth in Iqbal," Berlyavsky v. N.Y.C. Dep't of Envtl. Prot., No. 14-cv-3217, 2015 U.S. Dist. LEXIS 133647, at *24 (E.D.N.Y. Aug. 28, 2015) (Report and Recommendation) (citing Littlejohn v. City of New York, 795 F.3d 297, 310-11 (2d Cir. 2015)), adopted in relevant part, 2015 U.S. Dist. LEXIS 133102 (E.D.N.Y. Sept. 30, 2015).

Therefore, "[a]bsent direct evidence of discrimination, a plaintiff must allege facts that give 'plausible support' to show that that '[he] is a member of a protected class, was qualified [for his position], suffered an adverse employment action, and has at least minimal support for the position that the employer was motivated by a discriminatory intent.' " Id. (quoting Littlejohn 795 F.3d at 311); see Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015); see also Azkour v. Bowery Residents' Comm., Inc., No. 15-887, 2016 U.S. App. LEXIS 6890, at *3 (2d Cir. Apr. 18, 2016); Leketty v. City of New York, No. 15-cv-1169, 2016 U.S. App. LEXIS 2083, at *2 (2d Cir. Feb. 8, 2016).

The Second Circuit has recognized that "[t]he Swierkiewicz holding applies with equal force to any claim, including retaliation claims [under Title VII] that the McDonnell Douglas framework covers." Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 72 (2d Cir.

2006) (citing <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1062 (9th Cir. 2004), and <u>Jetter v.</u>

<u>Knothe Corp.</u>, 324 F.3d 73, 75 (2d Cir. 2003)).

**B.    As to Whether the Plaintiff Has Stated a Plausible Claim for Gender-Based Employment Discrimination under Title VII**

The Plaintiff alleges the following discriminatory conduct on the part of the District,

which he contends is sufficient to pass Rule 12 muster:

(1)    On December 4, 2013, Principal Klomp held a meeting to discuss his "emotional stability" after Middleton complained about his conduct in the workplace;

(2)    The District placed him under "heightened scrutiny" by conducting a formal investigation into Middleton's complaints of harassment;

(3)    On May 29, 2014, the District "placed [him] in a compromising position" apparently by failing to prevent Middleton from entering the same room as him, in violation of a restraining order;

(4)    On June 3, 2014, the District again "placed [him] in a compromising position" by assigning Middleton responsibility for administering testing materials to members of the School faculty, including the Plaintiff, which resulted in the two of them again occupying a common space, in violation of the restraining order;

(5)    On September 2, 2014, during an unrelated meeting, Principal Klomp remarked that Jaeger had had a "bad year" and that he, Principal Klomp, had been "more than fair" with Jaeger;

(6)    He has been denied unspecified classroom resources, administrative support, and has been effectively "cut off" from the rest of the School's science department; and

(7)    He has been prevented from obtaining unspecified promotions and other employment opportunities both in and outside of the District.

The Defendant argues that these allegations, even if true, fail to lend plausible

support for two essential elements of an employment discrimination claim, namely: (i) that

Jaeger suffered an adverse employment action; and (ii) that any such action occurred under

circumstances giving rise to an inference of gender discrimination on the part of the District.  The Court will now consider these issues in greater detail.

1.      As to Whether Jaeger Suffered an Adverse Employment Action

a.      The Applicable Legal Principles

"In this circuit, an adverse employment action is a 'materially adverse change in the terms and conditions of employment.' " Islamic Soc'y of Fire Dep't Pers. v. City of N.Y., 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (quoting Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 85 (2d Cir. 2001)).  Although "[t]he employment action need not involve job termination or a reduction in wages, . . . 'not every unpleasant matter short of [discharge or demotion] creates a cause of action.' " Id. (quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)); see Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (noting that an adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities" (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000))).  The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

In this regard, "[t]here are no 'bright-line rules' for determining whether an employee has suffered an adverse employment action," and so courts are required to " 'pore over each case to determine whether the challenged employment action reaches the level of 'adverse.' " Islamic Soc'y, 205 F. Supp. 2d at 83 (quoting Richardson, 180 F.3d at 446).  To that end, certain basic features of cognizable adverse employment actions have become settled.

For example, the Second Circuit has noted that, for purposes of Title VII, an adverse employment action generally includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Terry, 336 F.3d at 138 (quoting Galabya, 202 F.3d at 640).

Conversely, " '[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action.' " Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 642 (W.D.N.Y. 2014) (quoting Dimitracopoulos v. City of New York, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014) ("A thin-skinned worker's reaction to criticism by a supervisor will not support a claim of . . . discrimination unless it is outside the bounds of appropriate supervision")). Nor is "[a] negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss," considered an adverse employment action. Browne v. City Univ. of N.Y., 419 F. Supp. 315, 333-34 (E.D.N.Y. 2005) (citations omitted).

Nor will close monitoring by a supervisor or "excessive scrutiny constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." Abraham v. Potter, 494 F. Supp. 2d 141, 147-48 (D. Conn. 2007) (citations omitted); see Hall v. N.Y. City DOT, 701 F. Supp. 2d 318, 335-36 (E.D.N.Y. 2010) (finding that even if the plaintiff had been "scrutinized because of her . . . gender," there was no adverse employment action because "such conduct did not lead to materially adverse employment consequences"); Meder v. City of New York, No. 05-cv-919, 2007 U.S. Dist. LEXIS 30874, at *12-*13 (E.D.N.Y. Apr. 26, 2007) ("[E]ven if [the plaintiff's supervisors] subjected [her] to more monitoring than they did other teachers,

that is not sufficiently material to change her conditions of employment to count for . . . antidiscrimination purposes"); Hill v. Rayboy-Braustein, 467 F. Supp. 2d 336, 354-55 (S.D.N.Y. 2006) ("Excessive scrutiny, without more, does not constitute an adverse employment action"); Nicastro v. Runyon, 60 F. Supp. 2d 181, 187 (S.D.N.Y. 1999) (finding that the challenged actions by the plaintiff's employer, "such as scrutiny . . . that [the plaintiff] deemed excessive" did not rise to adverse employment actions).

In fact, "[c]ourts in this Circuit have held that investigations alone are [also] not adverse employment actions." Economou v. Caldera, No. 99-cv-12117, 2000 U.S. Dist. LEXIS 18231, at *74 (S.D.N.Y. Dec. 19, 2000) (collecting cases); see Weber v. City of New York, 973 F. Supp. 2d 227, 252-53 (E.D.N.Y. 2013) (collecting cases).

In sum, "everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." Cunningham v. N.Y. State DOL, 326 F. App'x 617, 619 (2d Cir. 2009).

In applying these standards, "courts in this circuit have universally rejected attempts by plaintiffs to show an adverse employment action based simply on the plaintiff's personal feelings about the employer's actions." Islamic Soc'y, 205 F. Supp. 2d at 85 (collecting cases). Rather, for a challenged employment action to be deemed "adverse" under the law, it must objectively alter for the worse the terms and conditions of a plaintiff's employment. Relying on the Eleventh Circuit's opinion in Doe v. Dekalb County School District, 145 F.3d 1441, 1452 (11th Cir. 1998), a district court in this District appropriately noted that:

Our requirement that a plaintiff must show, as part of his *prima facie* case, that he has suffered an adverse employment action would be essentially meaningless if we were to utilize a subjective standard. In order for an honest plaintiff to go to the trouble of suing his employer, he must be unhappy with some action that his employer has taken. Given this basic fact, a subjective standard would mean that no court would ever seriously consider the adverse employment action prong of a *prima facie* . . . case – we could just assume this element to be satisfied in every case. Even if we did not assume away the adversity requirement as a matter of course, a plaintiff could always prove this part of his case by testifying that he was unhappy with whatever employment action has brought him into court; an employer could rarely rebut its employee's statement of his own subjective feelings.

Islamic Soc'y, 205 F. Supp. 2d at 84.

### b. Application to the Facts of this Case

In the Court's view, the Plaintiff's allegations, even taken as true, fail to allege a plausible adverse employment action. Rather, the Plaintiff alleges to have suffered a series of minor indignities, which he found to be personally offensive, but which had no discernible impact on the material terms and conditions of his employment.

Initially, Jaeger's allegations of being placed under "heightened scrutiny" are insufficient to pass Rule 12 muster. In this regard, he contends that the District discriminated against him by formally investigating Middleton's complaints of workplace harassment. However, other than implying that the investigation was misguided because Middleton's accusations were false, Jaeger does not allege that the District made any findings that were adverse to him, or took any remedial action against him. Thus, the Plaintiff's claim of an adverse employment action is based entirely on the fact that an investigation was conducted. However, as set forth more fully above, the law is clear that investigations alone are not adverse employment actions.

Similarly, the Court is not persuaded by Jaeger's allegation, unsupported by specific facts, that in April 2014, Principal Klomp began monitoring his attendance more closely

than his peers.  Again, there is no allegation that this monitoring resulted in any change, material or otherwise, in the terms or conditions of his employment.

Further, the Court finds that Jaeger's allegations of criticism from District officials fall short of plausibly asserting an adverse employment action.  In this regard, the Plaintiff relies on remarks by Principal Klomp that he had a "bad year" and that the District had been "more than fair" with him.  However, these remarks took place in a meeting that was completely unrelated to the ongoing quarrel between Jaeger and Middleton, which is at the heart of this case.  Instead, it was convened to address whether Jaeger had impermissibly left the School's premises during a superintendent's conference day – an allegation he did not deny.  Further, as noted above, there is no allegation that these remarks, or the meeting in general, resulted in any disciplinary action on the part of the District.

Also, Jaeger alleges that the December 4, 2013 meeting with Principal Klomp, Ms. Durio, and Dr. Marino was convened to discuss his "emotional stability."  Initially, again, the Plaintiff does not claim that this meeting, or the District officials' apparent concern for his emotional wellbeing, resulted in any change whatsoever in the terms or conditions of his employment.  Further, although Jaeger does not allege who actually used the phrase "emotional stability," in the Court's view, there is no reasonable indication that their doing so constituted employer criticism that was "outside the bounds of appropriate supervision" so as to result in an adverse employment action.  See Dimitracopoulos, 26 F. Supp. 3d at 214.

On the contrary, the Plaintiff admits that, for several months leading up to this meeting, Middleton had lodged a series of complaints with both the District and the local police department, accusing the Plaintiff of harassing her at their workplace.  These

complaints ultimately culminated in Middleton obtaining an order of protection against him.  Therefore, in the Court's view, it is not plausible to suggest that a meeting to discuss the Plaintiff's emotional stability – which, in any event, did not result in any action on the part of the District – can be considered an adverse employment action within the meaning of Title VII.

Jaeger's allegations that the District repeatedly placed him in a compromising position by failing to prevent Middleton from coming into contact with him are similarly unavailing.  Initially, neither of the two complained-of encounters is alleged to have resulted in any communication or even direct interaction between Jaeger and Middleton. Nevertheless, aside from alleging that these incidents exposed him to potential liability under the protective order, Jaeger does not indicate how, if at all, these incidents affected the terms or conditions of his employment.

Finally, the Court finds that the string of allegations with which Jaeger concludes his complaint – namely, that at unspecified times, he was denied unspecified classroom resources and administrative support, and was ostracized from the School science department – are wholly conclusory and are insufficient to raise Jaeger's pleading above the speculative level.  The Court reaches the same conclusion with respect to his allegation that, at some unknown time, he was prevented from obtaining unspecified promotions or other employment opportunities both in and outside of the District.  These allegations are lacking in any supporting factual detail and are insufficient to satisfy Jaeger's pleading burden.  See Dowrich-Weeks v. Cooper Square Realty, Inc., 535 F. App'x 9, 11-12 (2d Cir. 2013) (affirming the district court's finding that the plaintiff, complaining of gender-based discrimination, had failed to sufficiently plead an adverse employment action because she

"allege[d] no facts supporting her conclusory assertion that she was 'demoted' "); Wright v. Monroe Cmty. Hosp., 493 F. App'x 233, 237 (2d Cir. 2012) (affirming the district court's dismissal of a gender discrimination claim where, although "the plaintiff argue[d] that the hospital 'continued to harass [her], increase her workload, and scrutinize her work to the point that she was taken out on medical leave,' this conclusory allegation is insufficiently specific to plausibly plead an adverse retaliatory action"); Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007) (noting that facts are properly rejected as legally insufficient where they "fail[ ] to give notice of the basic events and circumstances on which a plaintiff relies"); Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 405-06 (S.D.N.Y. 2014) (finding that the plaintiff's "[v]ague" and "conclusory allegation that she was denied overtime, without more" was insufficient to plead an adverse employment action).

In sum, while the Court is sensitive to the apparently contentious working relationship between Jaeger and Middleton; and to Jaeger's apparent displeasure to be working in a subordinate role to his ex-wife; there simply is no plausible allegation that this situation translated into any materially adverse change in the terms and conditions of his employment. Stated otherwise, there is no plausible indication that Jaeger has "suffered [a] loss of wages, benefits, responsibilities, or anything else." Ruggieri v. Harrington, 146 F. Supp. 2d 202, 216 (E.D.N.Y. 2001). Accordingly, to the extent the complaint fails to state facts to make it plausible that Jaeger suffered an adverse employment action, the Court finds that he has not stated a cognizable claim of discrimination under Title VII. Therefore, the District's motion to dismiss the cause of action based on Title VII discrimination is granted.

**2.    As to Whether the Pleading Permits a Minimal Inference of Discriminatory Intent on the Part of the District**

For the reasons that follow, the Court finds that the Plaintiff's cause of action based on Title VII discrimination also fails on the alternative ground that the facts fail to support even a minimal inference that the District harbored discriminatory animus against Jaeger based on his gender.

**a.    The Applicable Legal Principles**

A plaintiff complaining of gender-based employment discrimination under Title VII must plead enough facts to lend at least minimal support for the proposition that his sex was a motivating factor for the challenged employment practice.  See Vega, 801 F.3d at 85-86.  At the pleadings stage, the plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  Id. at 87.  "Whether the facts give rise to a plausible inference of discrimination 'is a flexible [standard] that can be satisfied differently in differing factual scenarios.' "  Jones v. Target Corp., No. 15-cv-4672, 2016 U.S. Dist. LEXIS 61, at *7-*8 (E.D.N.Y. Jan. 4, 2016) (quoting Howard v. MTA Metro-N. Commuter R.R., 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011)).

" 'A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.' "  Seale v. Madison Cnty. 929 F. Supp. 2d 51, 67 (N.D.N.Y. 2013) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)).  " 'If a comparison with another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated in all material respects.' "  Johnson v. Long Island Univ., 58

F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (quoting <u>Parra v. City of White Plains</u>, 48 F. Supp. 3d 542, 553 (S.D.N.Y. Sept. 4, 2014)).

In any event, "[t]he '*sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of*' the employee's protected characteristic." <u>Humphries v. City Univ. of N.Y.</u>, No. 13-cv-2641, 2013 U.S. Dist. LEXIS 169086, at *19 (S.D.N.Y Nov. 26, 2013) (quoting <u>Patane</u>, 508 F.3d at 112).

### b. Application to the Facts of this Case

Even assuming that the challenged employment actions constitute adverse employment actions within the meaning of Title VII, the complaint lacks any plausible indication that they occurred, in any measure, as a result of **a** discriminatory intent on the part of the District. On the contrary, the allegations make clear that all of the challenged actions took place as a direct result of serious complaints by Middleton that Jaeger was harassing her in the workplace. Although Jaeger disputes the accuracy of those accusations, the District's response to them cannot plausibly be interpreted as an act of discriminatory animus.

In his opposing legal memorandum, Jaeger argues that the complaint states a plausible discrimination claim under a theory of disparate treatment – that is, the District treated him less favorably than Middleton, who, as a woman, is not a member of his protected group, despite the fact that they were otherwise similarly situated. However, Jaeger admits that he and Middleton were *not* similarly situated within the District, because all of the challenged employment actions occurred after Middleton was promoted to a supervisory position. <u>See</u> Pl. Memo of Law at 12 (listing allegedly adverse employment

actions "all of which [arose] **after** Ms. Middleton's promotion to Plaintiff's supervisor" (emphasis in original)).

Further, the allegations of discriminatory treatment, even if accepted as true, do not support the proposition that the District acted unfairly "because of" Jaeger's sex. Rather, the challenged employment actions apparently all stemmed from Middleton's specific complaints to the District and the local police that Jaeger was harassing her. Those complaints spurred the District's investigation into Jaeger's behavior, and formed the basis for Principal Klomp's remarks that the Plaintiff had a "bad year." In addition, it was Middleton's complaints of harassment to the police that resulted in a restraining order against the Plaintiff, which, in turn, resulted in the "compromising positions" that he now contends the District should have done more to prevent.

Contrary to a plausible theory of disparate treatment, Jaeger fails to allege that he made similar complaints against Middleton, which the District dealt with in a different way because he is a man. Rather, he asserts only that "there appears to be no preliminary indication that Ms. Middleton was, in any way, subject to discipline for her actions undertaken against [him]." Pl. Memo of Law at 15. However, other than broadly asserting that Middleton's accusations of harassment were false – a claim that appears to be somewhat contradicted by the issuance of an order of protection – the only specific actions that she is alleged to have taken against Jaeger include "scream[ing]" at him in the presence of other School employees and "harass[ing] him about matters involving their children." In this regard, the complaint lacks any supporting factual information concerning these incidents and, more importantly, there is no indication that Jaeger ever communicated these incidents to the District. Nor is there an allegation that Jaeger complained to outside

authorities, such as the police, about Middleton's allegedly abusive conduct. Thus, even if Jaeger's allegations are true, they do not lend plausible support for the conclusion that he and Middleton were "similarly situated in all material respects" and that the District handled the two situations disparately based on discriminatory intent. On the contrary, taking all of Jaeger's allegations as true, the Court discerns nothing to suggest that Jaeger's gender played any part in the relevant events.

Accordingly, on the alternative ground that the complaint fails to state facts to make it plausible that the District took discriminatory employment actions "because of" Jaeger's gender, the Court finds that he has not stated a cognizable claim of discrimination under Title VII. Therefore, the District's motion to dismiss the cause of action based on Title VII discrimination is granted.

**C.    As to Whether the Plaintiff Has Stated a Plausible Claim for Retaliation under Title VII**

In the complaint, the Plaintiff also alleges that the following retaliatory conduct on the part of the District is sufficient to pass Rule 12 muster:

(1)    Principal Klomp began monitoring Jaeger's attendance after he filed the April 14, 2014 charge of discrimination;

(2)    Principal Klomp accused Jaeger of fabricating his version of the May 29, 2014 field trip incident after receiving a letter from Jaeger's lawyer; and

(3)    District officials accused Jaeger of improperly leaving the School premises during the superintendent's conference day after he filed an amended EEOC charge on July 8, 2014.

In support of its motion to dismiss, the District argues that the Plaintiff's allegations of retaliation fail to sustain his pleading burden as to three essential elements under Title VII, namely: (i) that Jaeger engaged in protected activity; (ii) that he suffered an adverse

employment action; and (iii) that there was a causal connection between the two. The Court will consider these issues in greater detail below.

### 1. As to Whether Jaeger Plausibly Alleged that he Engaged in a Protected Activity

#### a. The Applicable Legal Principles

"Title VII's anti-retaliation provision is 'construed to cover a broad range of employer conduct,' " St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 322 (E.D.N.Y. 2014) (quoting Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 173, 131 S. Ct. 863, 178 L. Ed. 2d 694 (2011)), and "includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings,' " Moore v. Kingsbrook Jewish Med. Ctr., No. 11-cv-3625, 2013 U.S. Dist. LEXIS 107111, at *55 (E.D.N.Y. July 30, 2013) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)); see Vega, 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee . . . because he engaged in protected activity – complaining about or otherwise opposing discrimination").

Relevant here, generally, the "filing of discrimination charges with the EEOC . . . is unquestionably a protected activity." Nielsen v. Bellevue Hosp., No. 94-cv-0774, 1996 U.S. Dist. LEXIS 11679, at *25 (S.D.N.Y. Aug. 14, 1996); see Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (finding that the plaintiff engaged in protected activity by filing an EEOC complaint); Doner-Hendrick v. N.Y. Inst. of Tech., 874 F. Supp. 2d 227, 241 (S.D.N.Y. 2012) (stating that "[t]he law protects employees when they file a formal charge of discrimination with the EEOC"); Walker v. N.Y.C. Tr. Auth., No. 99-cv-3337, 2001 U.S. Dist. LEXIS 14569, at *24 (S.D.N.Y. Sept. 19, 2001) (noting that the plaintiff's EEOC charges "certainly constitute protected activities").

However, to receive statutory protection, "an employee does not need to lodge a formal complaint of discrimination." <u>St. Juste</u>, 8 F. Supp. 322. Rather, to trigger Title VII's anti-retaliation provisions, an employee's actions need only be " 'sufficiently specific . . . so that the employer is put on notice that the plaintiff believes he . . . is being discriminated against on the basis of . . . gender,' " <u>Ellis v. Century 21 Dep't Stores</u>, No. 11-cv-2440, 2013 U.S. Dist. LEXIS 140241, at *102 (E.D.N.Y. Sept. 28, 2013) (quoting <u>Brummell v. Webster Cent. Sch. Dist.</u>, No. 06-cv-6437, 2009 U.S. Dist. LEXIS 7644, at *17-*18 (W.D.N.Y. Jan. 29, 2009)). Indeed, "[a]bsent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII." <u>Brummell</u>, 2009 U.S. Dist. LEXIS 7644, at *13-*14 (collecting cases); <u>see</u> <u>Castro v. City of New York</u>, 24 F. Supp. 3d 250, 270 (E.D.N.Y. 2014) ("Ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity" (quoting <u>Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC</u>, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007))).

For example, under certain circumstances, courts have found that correspondence from an attorney on behalf of an employee relating to allegations of discrimination can constitute protected activity. <u>See, e.g.</u>, <u>Adams v. Canon USA, Inc.</u>, No. 07-cv-3512, 2009 U.S. Dist. LEXIS 86722, at *54-55 (E.D.N.Y. Sept. 22, 2009) (counsel's letter indicating that her client, the employee, was subjected to gender-based discrimination constituted protected activity, even though the plaintiff did not complain to any supervisors during her employment); <u>see also</u> <u>Newsome v. IDB Capital Corp.</u>, No. 13-cv-6576, 2016 U.S. Dist. LEXIS 40754, at *88 (S.D.N.Y. Mar. 28, 2016); <u>McFadden v. State Univ. of N.Y.</u>, 195 F. Supp. 2d 436, 454-55 (W.D.N.Y. 2002).

In all cases, in order to be considered a protected activity, a Title VII plaintiff must have had a good faith belief that the challenged conduct on the part of his employer was prohibited by the statute, even if, in actuality, it was not.  See St. Juste, 8 F. Supp. 322 (citing, among others, La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 212 (2d Cir. 2010) ("It is well-established that a plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law" (internal citations omitted)).

### b.    Application to the Facts of this Case

As noted above, in his pleading, the Plaintiff alleges that the District retaliated against him for three discrete protected activities: (i) filing a charge of discrimination with the EEOC on April 14, 2014; (ii) having his attorney send a letter on June 3, 2014 demanding that the District take measures to prevent contact at the School between Jaeger and Middleton; and (iii) filing an amended charge of discrimination with the EEOC on July 8, 2014.

At the outset, the Court notes that, in his opposition brief, the Plaintiff attempts to broaden his retaliation claim to include several other actions on his part that he contends were protected activities under Title VII.  First, he refers to August 29, 2013, when he informed Superintendent Godek that he feared for his job security due to Middleton's anticipated supervisory role in the School.  However, even if this were protected activity, the complaint does not allege that the District took any retaliatory action.  Rather, Jaeger alleges only that, one month later, Middleton, who is not a party to this action, lodged a

false harassment complaint against him. Therefore, the August 29, 2013 incident cannot plausibly support a retaliation claim against the District.

Also, the Plaintiff refers to December 4, 2013, when, during a private meeting with Principal Klomp, Dr. Marino, and Ms. Durio, the Plaintiff reiterated his concerns about Middleton's supervisory role over him; her alleged harassment of him in the workplace; and the District's investigation into his conduct. However, again, even assuming that this constituted protected activity, the complaint does not allege that the District took any retaliatory actions following the meeting. On the contrary, the complaint contains no facts pertaining to the period of time between the December 4, 2013 meeting and April 14, 2014, when Jaeger filed his first EEOC charge. Therefore, the Court discerns no factual premise for Jaeger's reliance on the December 4, 2013 meeting as a predicate protected activity, and finds that this incident also cannot plausibly support a retaliation claim against the District.

As to the three examples of protected activities that the Court does consider to be logical predicates for alleged retaliation – namely, the April 14, 2014 and July 8, 2014 EEOC charges and the June 3, 2014 letter from Jaeger's attorney – the District disputes that any of these activities is entitled to protection under the law because they were not based on conduct that can reasonably and objectively be considered gender-based employment discrimination. Although this is a close question, the Court disagrees.

First, in the Court's view, there can be no legitimate dispute that by filing charges of discrimination with the EEOC that explicitly identified "sex" as the cause of discrimination, Jaeger satisfied the standard for protected activity. Although the District disputes whether the underlying facts supporting the charges were objectively sufficient to form a good faith belief that actionable discrimination had occurred, the Court is unable to conclude that

Title VII's anti-retaliation provisions were not implicated by this conduct, which, as the cases above make clear, is a paradigmatic protected activity and a well-known prerequisite to commencing a federal discrimination lawsuit.

The District's point is well-taken that Jaeger's supporting affidavits – much like his complaint in this action – makes almost no practical reference to his gender and complains exclusively about perceived indignities arising from the apparently contentious working relationship with Middleton. However, at this stage in the litigation, the Court is required to resolve ambiguities and draw inferences in favor of the Plaintiff. Given that the anti-retaliation provisions are intended to capture a broad range of employer conduct, and that Jaeger's actions need only be sufficiently specific to put the District on notice that he believed he was the subject of gender-based discrimination, the Court finds that the April 14, 2014 and July 8, 2014 EEOC charges are sufficient to satisfy the first element of the relevant legal standard.

Second, again, although the factual underpinning is questionable in terms of its ability to convey an objective depiction of discrimination, in the Court's view, the June 3, 2014 letter from the Plaintiff's counsel to Principal Klomp was nonetheless sufficient to constitute a protected activity. The factual basis for the letter notwithstanding, it was nonetheless sent to District officials, including Principal Klomp, Superintendent Godek, and the District's Assistant Superintendent, namely, Dr. Marino, on the letterhead of Zabell & Associates, P.C., which plainly states that the firm specializes in "employment counseling, litigation, labor & benefits law." Mr. Zabell opened the letter by stating that his law firm "is counsel to John Jaeger in connection with unlawful gender-based discrimination and retaliatory practices taken against him in the workplace." The letter went on to describe

the events surrounding Middleton's distribution of the Regents testing materials earlier that day. Under these circumstances, even assuming there is room for disagreement about whether the factual basis for the Plaintiff's claims was objectively reasonable, there can be no legitimate dispute that the District was placed on notice of his specific claim of unlawful discrimination.

Accordingly, the Court finds that the complaint states enough facts to plausibly allege that the Plaintiff engaged in protected activities. However, for substantially the same reasons as outlined above, the Court finds that the Plaintiff has failed to plausibly allege that, as a result of these activities, he suffered any adverse employment action, or that any such actions were causally connected to his complaints of discrimination.

**2.    As to Whether Jaeger Plausibly Alleged that he Suffered a Retaliatory Adverse Employment Action**

**a.    The Applicable Legal Principles**

"The 'standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII.' " Taylor v. New York City Dep't of Educ., No. 11-cv-3582, 2012 U.S. Dist. LEXIS 170917, at *28 (E.D.N.Y. Nov. 30, 2012) (quoting Vaughn City of New York, No. 06-cv-6547, 2010 U.S. Dist. LEXIS 50791, at *46 (E.D.N.Y. May 24, 2010)). In particular, "[u]nlike the discrimination provision of Title VII, which applies only to adverse actions affecting the terms and conditions of employment, the retaliation provision applies to actions 'likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.' " Vaughn, 2010 U.S. Dist. LEXIS 50791, at *46 (quoting Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

"In the context of a retaliation claim, an adverse action need not be related to the plaintiff's workplace or employment." Holleman v. Art Crating Inc., No. 12-cv-2719, 2014 U.S. Dist. LEXIS 139916, at *147 (E.D.N.Y. Sept. 30, 2014) (citing Burlington, 548 U.S. at 67). Rather, "[t]he 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse,' which means that the adverse action was not trivial and would deter a reasonable person from engaging in protected activity." Id. (quoting Burlington, 548 U.S. at 67). However, "Title VII is not a general 'bad acts' statute," Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 135 (2d Cir. 1999) (quoting Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989)), and " 'petty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation," Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington, 548 U.S. at 68).

Thus, as the Supreme Court has warned, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 548 U.S. at 67 (emphasizing that actionable employer conduct must be "materially" adverse because "it is important to separate significant from trivial harms").

### b. Application to the Facts of this Case

Applying these standards, the Court finds that the Plaintiff did not suffer any recognizable adverse action in retaliation for his protected activities. In particular, viewing Jaeger's allegations objectively, it is not plausible that any reasonable employee would be deterred by such trivial workplace slights from opposing legitimate acts of discrimination.

First, as described more fully above, the caselaw does not support the conclusion that Principal Klomp's monitoring of Jaeger's attendance, even if it differed from the

scrutiny given to his colleagues, is sufficient to constitute an adverse employment action. Given that the complaint fails to allege any facts to indicate that this monitoring resulted in a tangible change in the terms or conditions of the Plaintiff's employment – or, as the Supreme Court has said, that it "produce[d] an injury or harm" – it cannot plausibly support a claim of retaliation.

Second, the Court is also unpersuaded that a plausible claim of retaliation may rest on Principal Klomp's alleged accusation that the Plaintiff fabricated his version of the field trip incident on May 29, 2014 – which itself involved nothing more than Middleton occupying the same room as Jaeger and several other people, without any interaction or confrontation of any kind. Again, in this regard, even assuming that Principal Klomp did, as the Plaintiff dramatically asserts, "label[ ] [him] a liar," there is no allegation that the action had any discernible consequence for Jaeger. Indeed, the Plaintiff does not allege that he suffered any harm – professional, financial, reputational, or otherwise – as a result of Principal Klomp's accusation. Thus, there is no plausible basis for concluding that a reasonable worker in Jaeger's position would have found this criticism materially adverse. Stated otherwise, in the Court's view, the Plaintiff's attempt to cast this incident as a federally-cognizable adverse employment action is, on its face, implausible.

Third, the Plaintiff's argument that he suffered an adverse employment action when District officials "falsely accused" him of leaving the School premises during a superintendent's conference day is also unavailing. Initially, this can hardly be characterized as a "false accusation" because the Plaintiff does not deny that he did, in actuality, leave the School Premises on the date in question. Apparently, he feels affronted only because he "was aware of no such policy" that would have prohibited him from

leaving the School, and he alleges that certain unidentified colleagues also left but were not subject to similar inquiry. Therefore, the entire basis of this purported adverse employment action is the District's having privately questioned the Plaintiff about conduct in which he admits he engaged. Indeed, as noted above, it is not alleged that the District took any disciplinary action for his infraction or that any other consequence – material or otherwise – flowed from the meeting.

In the Court's view, this is a classical example of a *de minimis* workplace grievance that cannot rise to the level of an actionable adverse employment action. "Once upon a time, it was popular to say, 'Don't make a federal case out of it.' In this instance, [where the Plaintiff complains of unlawful retaliation based on an isolated bit of criticism, unaccompanied by any remedial action by his supervisor,] the wisdom of those words should be apparent." Levy v. Alfano, 47 F. Supp. 2d 488, 499 (S.D.N.Y. 1999), aff'd, 208 F.3d 203 (2d Cir. 2000).

Accordingly, to the extent the complaint fails to state facts to make it plausible that Jaeger suffered an adverse retaliatory action, the Court finds that he has not stated a cognizable claim of retaliation under Title VII. Therefore, the District's motion to dismiss the cause of action based on Title VII retaliation is granted.

### 3. As to Whether Jaeger Plausibly Alleged a Causal Connection Between Protected Activities and Adverse Employment Actions

The Court will briefly address the third and final prong of the standard for a retaliation claim, namely, the existence of "but for" causation between the protected activity and the allegedly adverse action. See Irons v. Bedford-Stuyvesant Cmty. Legal Servs., No. 13-cv-4467, 2015 U.S. Dist. LEXIS 130116, at *53-*54 & *85-86 (E.D.N.Y. Sept. 28, 2015).

Simply stated, in the Court's view, it is not plausible that, "but for" Jaeger's complaints of gender-based discrimination, the District: (i) would not have monitored his attendance; (ii) would have credited his version of the events of May 29, 2014; and (iii) would not have questioned his admittedly improper exit from the School premises during the superintendent's conference day.  On the contrary, in the Court's view, the only plausible inference permitted by the complaint – in fact, the conclusion expressly drawn by the Plaintiff in his legal memorandum – is that the District's actions, including its decision to commence "a formal investigation"; to "falsely accuse[ ] [him] of lying and violating school policies"; and to "subject [him] to heightened scrutiny in connection with his time and attendance record," "stem[med] directly from complaints filed by Ms. Middleton" and not from retaliatory animus.  See Pl. Memo of Law at 15.

In reaching this conclusion, the Court acknowledges that a challenged employment action may have multiple "but-for" causes, and that, in order to establish this element of his claim, the Plaintiff need only plead that a retaliatory intent was one of them.  See Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 n.5 (2d Cir. 2013) (citations omitted).  Thus, the Court has considered the possibility that Middleton's complaints *and* Jaeger's protected activities each provided a plausible motivation for the District's challenged actions.

However, given the apparently highly acrimonious personal relationship between Jaeger and Middleton; the numerous complaints of harassment that Middleton made to the District and the police; the Plaintiff's apparent frustration and discontent over the District's promotion of Middleton to a supervisory position; and, in the Court's view, the trivial nature of the workplace incidents that apparently inspired Jaeger to bring this lawsuit, the Court finds that it is not plausible that the District was motivated by Jaeger's largely

conclusory complaints of gender discrimination to retaliate against him.  See Twombly, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  Rather, the instant lawsuit appears to be the latest salvo in the ongoing personal and familial dispute between Jaeger and Middleton, which is, unfortunately, already waging in the halls of a high school, but lacks a sufficient legal implication to proceed in this Court.

Accordingly, on the alternative ground that the complaint fails to state facts to make it plausible that a causal connection, motivated by retaliatory intent on the part of the District, existed between the challenged employment actions and the Plaintiff's complaints of discrimination, the Court finds that he has not stated a cognizable claim of retaliation under Title VII.  Therefore, the District's motion to dismiss the cause of action based on Title VII retaliation is granted.

**D.      The Plaintiff Affirmatively Withdrew the State Law Claims**

In his opposing legal memorandum, Jaeger withdrew his causes of action based on gender-based discrimination and retaliation under the NYSHRL.  Accordingly, those claims are also dismissed with prejudice.

### III.      Conclusion

Based on the foregoing, the Court concludes that the Plaintiff has failed to sufficiently plead cognizable causes of action based on gender discrimination and retaliation under Title VII.  Further, as noted above, the Plaintiff has withdrawn his pendent state law claims.  Accordingly, the Defendants' motion to dismiss the complaint is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**

Dated:          Central Islip, New York       _/s/ Arthur D. Spatt_____
                June 7, 2016                  ARTHUR D. SPATT
                                              United States District Judge